**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000285**
**09-JUN-2022**
**07:50 AM**
**Dkt. 80 SO**

NO. CAAP-20-0000285

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
BRANDON J. McCLARY, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTA-19-01870)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Wadsworth and Nakasone, JJ.)

Defendant-Appellant Brandon J. McClary (**McClary**) appeals from the Notice of Entry of Judgment and/or Order and Plea/Judgment (**Judgment**), entered on March 6, 2020, in the District Court of the First Circuit, Honolulu Division (**District Court**).[1]  Following a bench trial, McClary was convicted of Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1) (Supp. 2018).[2]

On appeal, McClary contends that:  (1) the District Court conducted defective pre-trial and trial advisements of

---

[1]    The Honorable Randal I. Shintani presided.

[2]    HRS § 291E-61(a)(1) provides:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

　　(1)    While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

McClary's right to testify, by failing to use the proper language to adequately advise McClary that he had a constitutional right to testify at trial; (2) the ultimate Tachibana[3] colloquy was also inadequate because the District Court failed to ask McClary whether anyone was forcing him not to testify; and (3) there was no substantial evidence to support the OVUII conviction, because the State failed to prove that McClary operated a vehicle under the influence of alcohol "in an amount sufficient to impair [his] normal mental faculties or ability to care for [himself] and guard against casualty[.]"  HRS § 291E-61(a)(1).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve McClary's points of error as follows, and vacate the Judgment:

(1) and (2)  McClary first contends that the District Court violated Tachibana by not adequately informing him of his right to testify.  McClary argues that "the District Court used the following phrases of lesser gravity of importance, to wit, that [McClary] has the 'option of testifying,' that it is 'your final decision[,'] that 'you make that on your own what you think is best for you,' and that 'no one can force you not to testify.'"  McClary "submits that none of the phrases used by the District Court are capable of the same connotation of value and desirability as the word 'right' or the phrase 'right to testify[.]'"  McClary further contends that the ultimate colloquy was inadequate because the District Court did not ask McClary whether anyone was forcing him not to testify.

In State v. Martin, 146 Hawaiʻi 365, 463 P.3d 1022 (2020), the Hawaiʻi Supreme Court summarized the relevant case law as follows:

> Our law protects both the right to testify and the right not to testify.  State v. Celestine, 142 Hawaiʻi 165, 169, 415 P.3d 907, 911 (2018).  Tachibana v. State, 79 Hawaiʻi 226, 900 P.2d 1293 (1995), established the requirement that when a defendant in a criminal case

---

[3]  Tachibana v. State, 79 Hawaiʻi 226, 236 n.7, 900 P.2d 1293, 1303 n.7 (1995).

indicates an intention not to testify, the trial court must advise the defendant of the right to testify and must obtain an on-the-record waiver of the right.  79 Hawaiʻi at 236, 900 P.2d at 1303.  We stated that this advisement should consist of informing the defendant (1) that they have a right to testify, (2) that if they want to testify, no one can prevent them from doing so, and (3) that if they testify, the prosecution will be allowed to cross-examine them.  79 Hawaiʻi at 236 n.7, 900 P.2d at 1303 n.7.  We also stated that in connection with the privilege against self-incrimination, the defendant should also be advised (4) that they have a right not to testify and (5) that if they do not testify, then the jury can be instructed about that right.  Id. (citations omitted).  In a bench trial, defendants must be advised that if they exercise their right not to testify, no inference of guilt may be drawn for exercising this right, i.e., that a decision not to testify cannot be used against a defendant by the judge in deciding the case.  State v. Monteil, 134 Hawaiʻi 361, 371-72, 341 P.3d 567, 577-78 (2014).

After Tachibana, we also held that a second component of the Tachibana colloquy involves the court engaging in a true "colloquy" with the defendant.  Celestine, 142 Hawaiʻi at 170, 415 P.3d at 912, citing State v. Han, 130 Hawaiʻi 83, 90-91, 306 P.3d 128, 135-36 (2013).  This requires "a verbal exchange between the judge and the defendant 'in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights.'"  Celestine, 142 Hawaiʻi at 170, 415 P.3d at 912 (citing Han, 130 Hawaiʻi at 90, 306 P.3d at 135 (emphasis omitted)).

. . . .

A defendant's right to testify is violated when the colloquy does not establish "an objective basis for finding that the defendant knowingly, intelligently, and voluntarily gave up" their right to testify.  Han, 130 Hawaiʻi at 91, 306 P.3d at 136.  Courts look to the totality of the facts and circumstances to determine whether a waiver of the right to testify was voluntarily and intelligently made.  130 Hawaiʻi at 89, 306 P.3d at 134.

Id. at 378-79, 463 P.3d at 1035-36 (footnotes and brackets omitted).

The supreme court also has explained that "[i]n conducting the colloquy, the trial court must be careful not to influence the defendant's decision whether or not to testify . . . ."  Tachibana, 79 Hawaiʻi at 236 n.7, 900 P.2d at 1303 n.7. Relatedly, "the court's advisory to the defendant must maintain an 'even balance' between a defendant's right to testify and the right not to testify."  Monteil, 134 Hawaiʻi at 370, 341 P.3d at 576 (citing State v. Lewis, 94 Hawaiʻi 292, 295, 12 P.3d 1233, 1236 (2000)).

Additionally, in Lewis, the supreme court adopted a prospective requirement that, "prior to the start of trial, trial

courts must '(1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that if he or she has not testified by the end of the trial, the court will briefly question the defendant to ensure that the decision not to testify is the defendant's own decision.'" Monteil, 134 Hawaiʻi at 371, 341 P.3d at 577 (quoting Lewis, 94 Hawaiʻi at 297, 12 P.3d at 1238).

Here, prior to the start of trial on January 15, 2020, the District Court advised McClary as follows:

> Mr. McClary, also at some point in your proceeding . . . you will make a decision on whether to testify or not testify. Whether you testify or not is your decision. You make the final decision. You may consult with [defense counsel] about his thoughts about whether to testify or not, however, you make the final call on whether to testify or not.
>
> If you decide not to testify and remain silent, you invoke your right to remain silent, and the court cannot consider in any way your decision not to testify. The court can base its decision only on evidence presented by the State and/or any other evidence presented by your attorney in your defense other than your own testimony.
>
> If you decide to testify, you'll be placed under oath, subject to questioning by your attorney as well as questioning or cross-examination by the prosecutor. And anything you testify to the court can consider in deciding the outcome of this case.
>
> No one can force you to testify. No one can force you not to testify. It is your voluntary own decision whether to do so or not. Do you understand the choice you have?
>
> [McClary]: Yes, Your Honor.
>
> THE COURT: Okay. And I'll address you at some point later. You may have a seat. Thank you.

(Emphasis added.)

On January 28, 2020, trial continued and the District Court advised McClary as follows:

> Mr. McClary, at some point in your trial you will make a decision whether to testify or not testify. Whether you testify or not, that's your own decision. You make the final decision on whether to testify or not.
>
> You may consult with your attorney . . . on his thoughts about whether to testify or not, however, you make the final decision. Do you understand?
>
> [McClary]: Yes, Your Honor.
>
> THE COURT: If you decide not to testify, you invoke what is called the right to remain silent and the court

4

cannot consider in any way in determining the outcome of this case your invocation of this right. Okay?

I can base my decision only on the evidence presented by the State and/or any other evidence presented by your attorney other than your own testimony. Do you understand?

[McClary]: Yes, Your Honor.

THE COURT: If you decide to testify, you'll be placed under oath, subject to questioning by your attorney and questioning or cross-examination by the prosecutor. And anything you testify to, the court can consider in deciding the outcome of this case. And you've observed the officer testifying so you understand what testifying means. Is that correct?

[McClary]: Yes.

THE COURT: Okay. No one can force you to testify, no one can force you not to testify. That is your own decision to be made as you feel it's in your best interest. Do you understand your choices?

[McClary]: Yes, Your Honor.

THE COURT: Okay. Thank you.

(Emphasis added.)

After the State rested, defense counsel indicated his understanding that McClary did not wish to testify, and the District Court engaged in the following colloquy with McClary:

THE COURT: So, Mr. McClary, this is the point in your proceedings where as I had mentioned to you earlier you will make a decision whether to testify or not testify. Your attorney indicates you may have made a decision regarding that.

You have the option of not testifying, invoking your right to remain silent. And as explained earlier, this is a right you have to remain silent. And if you invoke the right to remain silent, the court cannot consider in any way your exercise of this right to remain silent. I can only base my decision based on the evidence presented, which is Officer Ah Nee's testimony in your case. Do you understand that option?

[McClary]: Yes, Your Honor.

THE COURT: Okay. You also have the option of testifying. And as you observed Officer Ah Nee, you'll be placed under oath, subject to questioning by your attorney as well as questioning or cross-examination by the prosecutor. And anything you testify to, the court can consider in deciding the outcome of this case. Do you understand?

[McClary]: Yes, Your Honor.

THE COURT: Okay. Now, knowing -- while you may consult with [defense counsel] on his thoughts on whether to testify or not, whether you testify or not is your final decision. You make that on your own what you think is best

> for you. No one can force you to testify. No one can force you not to testify. Do you understand?
>
> [McClary]: Yes.
>
> THE COURT: Okay. Do you have any questions about your choices?
>
> [McClary]: No, Your Honor.
>
> THE COURT: Okay. And have you made a decision?
>
> [McClary]: Yes, Your Honor.
>
> THE COURT: And what is that decision?
>
> [McClary]: I do not wish to testify.
>
> THE COURT: Okay. And this is your choice?
>
> [McClary]: Yes.
>
> THE COURT: Okay. The court's satisfied.

(Emphasis added.)

As the record reveals, the District Court did not directly inform McClary that he had a right to testify during any of the three advisements that were given. Instead, the District Court framed the right to testify as an "option" or "decision." In contrast, the court repeatedly characterized a decision not to testify as invoking the right to remain silent. This disparity in describing the rights at issue did not "maintain an 'even balance' between [McClary's] right to testify and the right not to testify." Monteil, 134 Hawaiʻi at 370, 341 P.3d at 576; see id. ("Expressly recognizing the importance of a balanced advisement, Tachibana provides the trial courts with specific guidance for the 'ultimate' colloquy to ensure defendants are informed of their right to testify and not to testify, without influencing this decision."); see also State v. Torres, 144 Hawaiʻi 282, 284, 439 P.3d 234, 236 (2019) ("Our precedents also firmly establish that a defendant's right to testify is of equal constitutional stature to the defendant's corresponding right to refrain from testifying."); State v. Philling, No. CAAP-18-0000653, 2019 WL 6790773, at *3 (Haw. App. Dec. 12, 2019) (SDO) ("[A]lthough the District Court used the phrase 'if you elect to testify' in various queries, the court did not inform [the defendant] that he had a right to testify, as is required."). We further note that in the ultimate colloquy, the

District Court did not specifically ask McClary whether anyone was forcing him not to testify. See Celestine, 142 Hawaiʻi at 170-71, 415 P.3d at 912-13 ("As part of [the ultimate colloquy], the trial court elicits responses as to whether the defendant intends to not testify, whether anyone is forcing the defendant not to testify, and whether the decision to not testify is the defendant's." (citing Han, 130 Hawaiʻi at 91, 306 P.3d at 136)). On this record, based on the totality of the facts and circumstances, we cannot conclude that McClary's waiver of his right to testify was knowingly, intelligently, and voluntarily made.

"Once a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." State v. Pomroy, 132 Hawaiʻi 85, 94, 319 P.3d 1093, 1102 (2014) (quoting Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307). Here, the record does not contain any indication of what McClary would have said if he had testified. See State v. Hoang, 94 Hawaiʻi 271, 279, 12 P.3d 371, 379 (App. 2000) ("In general, it is inherently difficult, if not impossible, to divine what effect a violation of the defendant's constitutional right to testify had on the outcome of any particular case."). Based on our review of the record, we cannot conclude that the District Court's deficient colloquy was harmless beyond a reasonable doubt.

We therefore vacate McClary's OVUII conviction.

(3) McClary also contends that there was no substantial evidence to support his OVUII conviction, because the State failed to prove the alcohol impairment element.

We review the sufficiency of the evidence to support a conviction as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial

7

> evidence to support the requisite findings for conviction,
> the trial court will be affirmed.
>
> > "Substantial evidence" as to every material element of
> > the offense charged is credible evidence which is of
> > sufficient quality and probative value to enable a
> > person of reasonable caution to support a conclusion.
> > And as trier of fact, the trial judge is free to make
> > all reasonable and rational inferences under the facts
> > in evidence, including circumstantial evidence.

State v. Matavale, 115 Hawaiʻi 149, 157-58, 166 P.3d 322, 330-31
(2007) (brackets omitted) (quoting State v. Batson, 73 Haw. 236,
248-49, 831 P.2d 924, 931 (1992)).

In order to convict McClary of OVUII, the State was
required to prove beyond a reasonable doubt that (1) McClary (2)
operated or assumed actual physical control of a vehicle upon a
public street, road, or highway, while (3) under the influence of
alcohol in an amount sufficient to impair his normal mental
faculties or ability to care for himself and guard against
casualty (the **alcohol impairment element**).  HRS § 291E-61(a)(1).
"'Impair' means to weaken, to lessen in power, to diminish, to
damage, or to make worse by diminishing in some material respect
or otherwise affecting in an injurious manner."  HRS § 291E-1.

With respect to the alcohol impairment element, the
State presented evidence at trial that the arresting officer
stopped McClary after observing him driving his vehicle at a high
rate of speed – producing a speed reading of 86 miles per hour on
the officer's handheld lidar device – while passing other
vehicles on the freeway; after the stop, the officer observed
that McClary's eyes were "red, watery, [and] glassy[,]" and
detected the odor of "an alcoholic-type beverage" coming from
McClary; McClary told the officer that "he had been drinking
earlier, but that he felt fine"; and McClary performed poorly on
the standardized field sobriety test (**SFST**) administered by the
officer.  In particular, the arresting officer observed that
during the horizontal gaze nystagmus test, McClary was "swaying a
little bit side to side a couple inches" and had to be reminded
"to keep his head still"; during the walk-and-turn test, McClary
"had a difficult time standing in the instructional stance,"
"broke out of that stance twice," missed touching heel to toe
twice during the first nine steps, appeared to lose his balance

"a bit" when he started his return, stepped out to the side, and "missed heal-to-toe towards the end"; during the one-leg-stand test, when McClary raised his foot, it swayed in a circular motion, and "[t]owards the end he happened to place his . . . foot down a couple of times[.]"

McClary argues that his "rate of speed is not of sufficient probative value because there is zero evidence of the speed limit[.]" (Capitalization altered.) Although the State did not elicit direct evidence of the posted speed limit, the arresting officer did testify that he pulled McClary over for violating the speed limit and that "th[is] particular type of speeding is rare." Further, during closing argument, defense counsel acknowledged that McClary was "going 86 in a 55" and conceded that "he was speeding." McClary's contention thus lacks merit.

McClary next argues that his "rate of speed is not of 'sufficient probative value' because there is zero evidence to reasonably infer that speed is probative of alcohol impairment[.]" (Capitalization altered.) However, at trial, the arresting officer explained the facts he considered before arresting McClary, stating in part:

> So the first factor was the operation of the vehicle. Yes, there was speeding involved, but that particular type of speeding is rare. And the decision to operate a vehicle like that is through my training and experience is a -- a choice that sometimes things can impair that decision. . . .

In finding McClary guilty of OVUII, the District Court "look[ed] at all the evidence[,]" including "[t]he rate of speed Mr. McClary was driving on this particular evening[.]" Viewing the evidence in the light most favorable to the State and recognizing that "the judge may draw all reasonable and legitimate inferences and deductions from the evidence," State v. Eastman, 81 Hawaiʻi 131, 139, 913 P.2d 57, 65 (1996), we cannot conclude that the District Court unreasonably inferred McClary's alcohol impairment in part from his "rare" rate of speed. See State v. Hopkins, No. CAAP-19-0000408, 2021 WL 4167382, at *3 (Haw. App. Sept. 14, 2021) (SDO) (concluding that the defendant's driving, including his speeding 23 miles per hour over the speed limit, combined

with the arresting officer's observations of the defendant's physical indicia of intoxication and performance on the SFST, constituted substantial evidence supporting the OVUII conviction).  McClary's contention is thus without merit.

McClary's remaining arguments regarding the sufficiency of the evidence involve the credibility of the testifying officer or the weight of the evidence.  We will "not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge."  Eastman, 81 Hawaiʻi at 139, 913 P.2d at 65.

Upon review of the record, and viewing the evidence in the strongest light for the prosecution, we conclude there was substantial evidence that McClary operated a vehicle while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty.  Accordingly, on this record, the evidence was sufficient to support McClary's OVUII conviction.

For the reasons discussed above, we vacate the Notice of Entry of Judgment and/or Order and Plea/Judgment, entered on March 6, 2020, in the District Court of the First Circuit, Honolulu Division.  We remand the case for a new trial and for further proceedings consistent with this Summary Disposition Order.

DATED:  Honolulu, Hawaiʻi, June 9, 2022.


On the briefs:

Marcus B. Sierra
for Defendant-Appellant.

Donn Fudo,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Karen T. Nakasone
Associate Judge